FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 26, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AMANDA KAY BATTEN,<br><br>          Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>          Defendant. | No. 1:16-cv-03226-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 17, 18 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 17) and grants Defendant's motion (ECF No. 18).

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for Title II disability insurance benefits and for Title XVI supplemental security income benefits on April 22, 2013, alleging a disability onset date of January 1, 2012.  Tr. 227-40.  The applications were denied initially, Tr. 98-117, and on reconsideration, Tr. 120-43.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 12, 2015.  Tr. 41-95. On December 31, 2015, the ALJ denied Plaintiff's claim.  Tr. 17-40.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2012.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: degenerative

disk disease, obesity, bilateral heal spurs/plant fasciitis, anxiety disorder, affective disorder, and substance abuse disorder. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [W]ithin every 2 hour timeframe, she must periodically shift between sitting with standing. Shifting between sitting and standing can be accomplished by any work tasks requiring such shifts or can be done in either position temporarily or longer (such as taking items from one area to another; changing work stations; or answering the phone, which can be done in a standing or sitting position). The claimant can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. She can occasionally crouch and stoop. She should avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights. She is limited to occasional contact with the public for work tasks. She is limited to frequent contact with co-workers for work tasks.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 31. At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as assembler, production; hand packager; and deliverer, outside. Tr. 32. Thus, the ALJ concluded Plaintiff has not been under a disability since January 1, 2012. Tr. 33. On November 10, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's

ORDER - 7

decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly identified all of Plaintiff's severe impairments at step two;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated the credibility of Plaintiff's testimony; and

4. Whether the ALJ properly evaluated the lay opinion evidence. ECF No. 17 at 8-21.

## DISCUSSION

**A. Step Two**

Plaintiff contends that the ALJ improperly failed to identify Plaintiff's personality disorder as a severe impairment at step two. ECF No. 17 at 12-13.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her

physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908 (2010).[1]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work…." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to

---

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised. The Court applies the version that was in effect at the time of the ALJ's decision.

supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 416.921(a) (2010);[2]  S.S.R. 85-28.

Here, Plaintiff alleges the ALJ improperly found Plaintiff's personality disorder is not a severe impairment at step two.  ECF No. 17 at 12-13.  The ALJ considered personality disorder at step two, but found it was not a severe impairment because "it was never diagnosed by a medically acceptable source." Tr. 23.  Plaintiff accurately notes that Dr. Cline, a medically acceptable source, diagnosed personality disorder not otherwise specified on June 23, 2015.  Tr. 798. Thus, the ALJ erred in failing to consider whether Plaintiff's personality disorder was a severe impairment.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  An error is harmless where it is nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability

_____

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. The Court applies the version that was in effect at the time of the ALJ's decision.

conclusion. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the error is harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to identify any limitation associated with this impairment that was not incorporated into the RFC. *See Stout*, 454 F.3d at 1055; *Burch*, 400 F.3d at 682. Despite rejecting personality disorder at step two, the ALJ specifically found "regardless of the precise mental diagnoses, the overall evidence does not reflect greater restrictions than those in the residual functional capacity below." Tr. 23. Thus, Plaintiff is not entitled to remand on these grounds.

## B. Medical Opinion Evidence

Next, Plaintiff challenges the ALJ's consideration of the medical opinions of Dr. Johnson, Dr. Platter, Dr. Zeris, and Dr. Cline. ECF No. 17 at 8-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

*1. Matthew Johnson, M.D.*

Dr. Johnson treated Plaintiff from April 2012 to January 2015. Tr. 492-93; Tr. 588-91. On November 18, 2013, Dr. Johnson opined Plaintiff was severely limited, which was defined as unable to lift at least two pounds or unable to stand or walk, and that Plaintiff would likely miss four or more days of work in an average month. Tr. 503. On January 27, 2015, Dr. Johnson opined Plaintiff had additional unspecified functional limitations in her hand due to carpal tunnel, but

otherwise there were no significant changes since the prior functional assessment. Tr. 633.  The ALJ assigned this opinion little weight.  Tr. 30.  Because Dr. Johnson's opinion was contradicted by nonexamining Dr. Platter, Tr. 139-41, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006).

First, the ALJ gave less weight to Dr. Johnson's opinion because it was not supported by either Dr. Johnson's findings or the record as a whole.  Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999); *see also Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Here, Dr. Johnson's profound limitations were not supported by his treatment notes, which generally indicate Plaintiff was able to ambulate normally and was not in distress.  *See* Tr. 480-96 (normal ambulation, no observation of distress); Tr. 530-40 (normal ambulation, no observation of distress); Tr. 588-630

(normal ambulation, no observation of distress); Tr. 748-812 (normal ambulation, no observation of distress). These findings were inconsistent with Dr. Johnson's opinion that Plaintiff would be unable to lift two pounds or stand or walk. Tr. 503, 633. This level of impairment was also unsupported throughout the record, which generally shows mild findings. *See* Tr. 408-09 (mild degenerative changes in the spine); Tr. 494 (mild degenerative disc disease, otherwise unremarkable); Tr. 495 (minimal degenerative disc disease); Tr. 496 (mild multilevel degenerative changes of thoracic spine); Tr. 550 (mild disc degeneration). This was a specific and legitimate reason to discredit Dr. Johnson's opinion.

Second, the ALJ gave less weight to Dr. Johnson's opinion because it was based on Plaintiff's discredited self-reports. Tr. 31. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In the absence of supporting objective evidence, the ALJ reasonably concluded that Dr. Johnson's opinion was based on Plaintiff's subjective reports. As discussed *infra*, the ALJ gave several legally sufficient reasons for rejecting Plaintiff's symptom testimony. Therefore, Dr. Johnson's reliance on Plaintiff's subjective symptom complaints was another specific and legitimate reason to discredit Dr. Johnson's opinion.

Finally, the ALJ discredited Dr. Johnson's opinion for being inconsistent with Plaintiff's daily activities. Tr. 31. An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan*, 169 F.3d at 601-02. Plaintiff's daily activities were inconsistent with Dr. Johnson's opinion that Plaintiff would be unable to lift more than two pounds or to stand or walk. *See* Tr. 47 (able to work as a part-time caregiver); Tr. 49 (able to fold laundry); Tr. 72 (able to buy food and perform household chores); Tr. 73-75 (able to attend child's sports practices and games); Tr. 80 (able to lift light weights and stretch along with an exercise video); Tr. 317 (able to prepare complete meals daily and perform household chores for one to four hours at a time). This was another specific and legitimate reason to discredit Dr. Johnson's extreme limitations.

Plaintiff further faults the ALJ for crediting reviewing physician Dr. Platter over treating physician Dr. Johnson. ECF No. 17 at 8-10. The ALJ credited Dr. Platter's opinion because Dr. Platter was able to review the record as a whole and because Dr. Platter's opinion was consistent with the overall evidence. An ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, but the same standard does not apply to credited opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. Here, however, the reasons the ALJ did provide were specific and legitimate

reasons to credit Dr. Platter's opinion over Dr. Johnson. Plaintiff is not entitled to remand on these grounds.

### 2. *Stamatis Zeris, M.D.*

Dr. Zeris examined Plaintiff on July 20, 2013, and opined Plaintiff was able to perform simple and repetitive tasks, as well as detailed and complex tasks; could accept instructions from supervisors; could maintain regular attendance in the workplace and complete a normal workday without interruptions; and could deal with the usual stress encountered in the workplace. Tr. 435-39. The ALJ gave this opinion significant weight. Tr. 30.

Plaintiff assigns error to the ALJ's failure to include Dr. Zeris' comment about special instructions in the RFC. ECF No. 17 at 11-12. The ALJ's role is to consider the evidence, state an interpretation thereof, and make findings accordingly. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is not required to discuss every piece of evidence in the record. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The RFC is defective where it "fails to take into account a claimant's limitations." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

Here, Dr. Zeris noted in the functional assessment "[Plaintiff] reports that she would have difficulty interacting with coworkers and the public if they were male and she also describes not having good interpersonal skills; however, given

special or additional instruction, would allow her to perform work activities on a consistent basis." Tr. 439. The RFC does not include a limitation specific to special instruction or Plaintiff's preference for avoiding interactions with men. Tr. 25.

The contested sentence in Dr. Zeris' report can reasonably be read as a reiteration of information Plaintiff reported to Dr. Zeris, rather than Dr. Zeris' own medical opinion and assessed limitation. Since the ALJ credited Dr. Zeris' opinion but failed to include this sentence in the RFC, the ALJ reasonably treated this sentence as such. This interpretation is further supported by the fact that just prior to reiterating Plaintiff's self-reported limitation, Dr. Zeris opined "[Plaintiff] can accept instructions from supervisors, as evidenced by my interaction with her today." Tr. 439. Reading these sentences together, Dr. Zeris gave an opinion regarding a lack of functional limitation in Plaintiff's ability to accept instructions, then reiterated Plaintiff's contrary self-reported limitations. The Court finds that a reasonable interpretation of this record is that the ALJ concluded, reasonably so, that the mention of special instruction is not a functional limitation. Additionally, any limitation stemming from Plaintiff's self-reported difficulty with interpersonal skills is otherwise addressed in the RFC's limitation to occasional contact with the public. Tr. 25. The Court will not now disturb the ALJ's interpretation of the

evidence.  *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008).

### 3.  Rebekah Cline, Psy. D.

Dr. Cline examined Plaintiff on June 23, 2015 and opined Plaintiff had moderate impairments in her ability to understand, remember, and persist in tasks by following detailed instruction; perform activities within a schedule; perform routine tasks without special supervision; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; set realistic goals and plan independently; and has marked impairments in her ability to communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and maintain appropriate behavior in a work setting.  Tr. 796-801.  The ALJ assigned this opinion little weight.  Tr. 31.  Because this opinion was contradicted by Dr. Zeris, Tr. 435-39, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Cline's opinion was not supported by her examination notes.  Tr. 31.  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  Moreover, a physician's opinion may be rejected if it is unsupported by the physician's

ORDER - 18

treatment notes.  *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003)

(affirming ALJ's rejection of physician's opinion as unsupported by physician's

treatment notes).  Although Dr. Cline opined Plaintiff would be limited in her

ability to communicate effectively, maintain appropriate behavior, and complete a

normal workday, Dr. Cline's mental status examination notes describe Plaintiff as

"neatly attired and groomed," her speech within normal limits, her attitude

cooperative, her mood good, and her affect bright and cheery.  Tr. 800.  The level

of impairment Dr. Cline opined was not consistent with these observations.

Second, the ALJ discredited Dr. Cline's opinion for being based on

Plaintiff's properly rejected self-reports.  Tr. 31.  A physician's opinion may be

rejected if it based on a claimant's subjective complaints which were properly

discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885

F.2d at 604.  The ALJ found that Dr. Cline's assessment of personality disorder

and Plaintiff's associated limitations were based on Plaintiff's subjective

complaints.  Tr. 31.  However, as discussed *infra*, the ALJ gave several legally

sufficient reasons for rejecting Plaintiff's symptom testimony.  Therefore, Dr.

Cline's reliance on Plaintiff's subjective symptom complaints was another specific

and legitimate reason to discredit Dr. Cline's opinion.

Third, the ALJ found Dr. Cline's opinion was inconsistent with the record as

a whole.  Tr. 31.  Relevant factors to evaluating any medical opinion include the

amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague*, 812 F.2d at 1229-30. If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. Here, the ALJ noted that Dr. Cline's opinion was inconsistent with the record as a whole, which generally shows normal psychiatric examination results. *See, e.g.,* Tr. 474 (calm mood and congruent affect); Tr. 475 (same); Tr. 482 (normal mood and affect); Tr. 484 (good judgment and normal mood and affect); Tr. 532 (normal mood and affect); Tr. 539 (same); Tr. 552 (stable mood and affect); Tr. 595 (normal mood and affect); Tr. 603 (normal mood and affect); Tr. 606 (normal mood and affect); Tr. 610 (normal mood and affect). This lack of support throughout the record was a specific and legitimate reason to discredit Dr. Cline's opinion.

Finally, the ALJ found Dr. Cline's opinion was inconsistent with Plaintiff's daily activities. Tr. 31. An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan*, 169 F.3d at 601-02. Although Dr. Cline opined Plaintiff was limited in her ability to communicate

ORDER - 20

with others and maintain appropriate behavior in a work setting, Plaintiff engaged

in several activities that required communication with others and maintaining

appropriate workplace behavior, including working as a caregiver, Tr. 47, 51;

volunteering at her church, Tr. 49; and applying to volunteer in her child's

classroom, Tr. 75. These activities were inconsistent with the level of impairment

Dr. Cline opined, and were thus another specific and legitimate reason to discredit

her opinion.

### C. Plaintiff's Symptom Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 17 at 15-21. An ALJ

engages in a two-step analysis to determine whether a claimant's testimony

regarding subjective pain or symptoms is credible. "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not

required to show that her impairment could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572

F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of her symptoms was not entirely credible.  Tr. 26.

### 1. Lack of Objective Medical Evidence

The ALJ found that several of Plaintiff's symptom complaints were not supported by the medical evidence.  Tr. 26-28.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §416.929(c)(2).

Here, the ALJ identified several aspects of Plaintiff's symptom testimony that were not supported by the medical evidence.  For example, the ALJ noted Plaintiff reported severe back pain, at one point rating her pain as a nine out of a ten on the pain scale.  Tr. 26-27, 498.  To support this testimony, Plaintiff offered the opinion of Dr. Burkett, which Plaintiff submitted after the ALJ rendered the decision, but which was considered by the Appeals Council.  Tr. 2; Tr. 879-81.  "[W]hen a claimant submits evidence for the first time to the Appeals Council … the new evidence is part of the administrative record, which the district court must

ORDER - 23

consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). Dr. Burkett opined Plaintiff's claims of severe back pain were supported by certain observations throughout the record. Tr. 881. However, even if Dr. Burkett's opinion were fully credited, the ALJ's credibility finding is still supported by substantial evidence because back pain was not the only symptom testimony the ALJ found was not supported by the record.

Plaintiff also testified that her feet caused her so much pain that she spent approximately one quarter of her day with her feet elevated and could only stand for approximately ten minutes. Tr. 59. As the ALJ noted, however, Plaintiff's medical providers regularly observed normal gait, ambulation, and no distress. Tr. 27; *see, e.g.,* Tr. 377, Tr. 480-96; Tr. 530-40; Tr. 588-630; Tr. 748-812. As the ALJ noted, Plaintiff's psychiatric symptom testimony was similarly unsupported. Tr. 27-28. Plaintiff testified she experienced multiple daily panic attacks with shortness of breath, chest tightness, and rapid heartbeat. Tr. 62. However, Plaintiff's mental health treatment notes did not reflect these symptoms, and generally show Plaintiff as cooperative, calm, and stable. *See, e.g.,* Tr. 474; Tr. 475; Tr. 482; Tr. 484; Tr. 532; Tr. 539; Tr. 552; Tr. 595; Tr. 603; Tr. 606; Tr. 610. This lack of supporting medical evidence was a relevant consideration in the ALJ's credibility determination.

### 2. Inconsistent Statements Regarding Drug Use

The ALJ found that Plaintiff made inconsistent statements about her drug use. Tr. 28. In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements. *See Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Moreover, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959. The record shows several instances of Plaintiff admitting using methamphetamine. Tr. 560 (September 20 and 22, 2014); Tr. 587 (October 27, 2014); Tr. 558 (November 5, 2014); Tr. 53 (last use of controlled substances was December 31, 2014). Yet during that time period, Plaintiff told her medical providers she was not using illegal drugs. Tr. 609 (September 12, 2014); Tr. 605 (September 29, 2014); Tr. 601 (November 4, 2014). These inconsistencies were a clear and convincing reason for the ALJ to discredit Plaintiff's symptom testimony.

### 3. Drug-Seeking Behavior

The ALJ further found Plaintiff's history of drug-seeking behavior undermined the credibility of her symptom testimony. Tr. 28. Drug-seeking behavior can constitute a clear and convincing reason to discount a claimant's credibility. *See Edlund*, 253 F.3d at 1157 (holding that evidence of drug-seeking

behavior undermines a claimant's credibility); *Gray v. Comm'r, of Soc. Sec.*, 365 Fed. App'x. 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid reason for finding a claimant not credible); *Lewis v. Astrue*, 238 Fed. App'x. 300, 302 (9th Cir. 2007) (inconsistency with the medical evidence and drug-seeking behavior sufficient to discount credibility); *Morton v. Astrue*, 232 Fed. App'x. 718, 719 (9th Cir. 2007) (drug-seeking behavior is a valid reason for questioning a claimant's credibility). Here, the ALJ observed multiple occasions in which Plaintiff requested early refills of benzodiazepines and narcotics, and at one point requested an early refill because she reported her medications were stolen. Tr. 588-89; Tr. 596-97; Tr. 600-01; Tr. 604-05. However, a urinalysis test conducted during this time period was negative for both benzodiazepines and narcotics. Tr. 564. The ALJ reasonably concluded that Plaintiff was diverting or otherwise misusing these medications. Tr. 28.

Plaintiff argues the ALJ erroneously relied on Plaintiff's drug use to categorically discredit Plaintiff's symptom testimony. ECF No. 17 at 18. Here, the ALJ did not rely on Plaintiff's drug use to discredit her testimony. Rather, the ALJ identified specific instances of inconsistent statements and conduct consistent with improper drug-seeking behavior that support an adverse credibility determination. *See Thomas,* 278 F.3d at 958-59.

Plaintiff also argues the ALJ erroneously considered drug or alcohol abuse prior to the conclusion of step five in the sequential analysis. ECF No. 17 at 18-19. In cases involved drug or alcohol abuse, the ALJ must "conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If the claimant is found disabled at step five, the ALJ must then determine whether the claimant would still be found disabled if he or she stopped using alcohol or drugs. *Id.* Plaintiff's argument is misplaced, as the ALJ did not determine Plaintiff was disabled at step five. Tr. 33. Furthermore, drug-seeking behavior is a legitimate reason to discredit a claimant's testimony. *See Edlund*, 253 F.3d at 1157. The ALJ did not err in this analysis.

*4. Ability to Work Despite Impairments*

The ALJ discredited Plaintiff's symptom testimony in part because Plaintiff was able to work with her alleged impairments. Tr. 28. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Here, the ALJ observed Plaintiff worked as a caregiver from the first quarter of 2012 to at least the third quarter of 2013. Tr. 28. Specifically, the ALJ found that even though this was part-time employment and was done with accommodations, the activities Plaintiff reported in performing this work were inconsistent with the level of impairment alleged. *Id.*

Plaintiff's duties included light house cleaning, cooking, running errands, shopping, helping clients get dressed, ensuring her clients did not fall, and reminding clients to take medication.  Tr. 328, 436.  The ALJ also noted Plaintiff was engaged in this work while also performing a range of activities of daily living that were inconsistent with the level of impairment alleged.  Tr. 29.  Given that Plaintiff was able to work with her impairments, the ALJ determined that Plaintiff's symptoms were not disabling as alleged.  This was a clear and convincing reason to question Plaintiff's credibility.[3]

### 5. Activities of Daily Living

Finally, the ALJ found Plaintiff's activities of daily living were inconsistent with the level of impairment alleged.  Tr. 29.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn,* 495 F.3d at 639; *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the

---

[3] To the extent Plaintiff implies this is an unsuccessful work attempt, Plaintiff's employment exceeds the six-month limit of an unsuccessful work attempt.  20 C.F.R. § 404.1574(c) (2006).

performance of physical functions that are transferable to a work setting.").

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted). Here, the ALJ identified several of Plaintiff's daily activities that were inconsistent with her alleged impairments. Plaintiff testified that she completes household chores, Tr. 317; prepares meals daily, Tr. 317; shops for the family, Tr. 318; does laundry, Tr. 316; spends time with friends, Tr. 319; attends her son's sports practices and games, Tr. 73; goes out to eat with her boyfriend, Tr. 77; regularly attends church, Tr. 319; and gambled at a casino, Tr. 77. Plaintiff reported doing many of these activities during the same time period in which she was working part-time as a caregiver. Tr. 321. These activities were inconsistent with Plaintiff's claims that she must spend a quarter of her day with her feet elevated, was unable to be on her feet for more than ten minutes at a time, and suffered debilitating panic attacks when around groups of two or more other people. Tr. 59-60; Tr. 62-63; Tr. 68-70.

The ALJ also found Plaintiff's activities caring for her eight- and five-year old children were inconsistent with the level of impairment alleged. Tr. 29. The

ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. However, the Ninth Circuit has recently clarified that an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations. *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017) (considering the ability to provide childcare in the context of discrediting a treating physician's opinion rather than a claimant's credibility). Here, the ALJ made specific findings about Plaintiff's childcare activities. The ALJ noted Plaintiff is able to get her children ready for school, Tr. 316; make the beds, Tr. 316; bathe the children, Tr. 74; prepare meals, Tr. 317; drive the children to school, Tr. 78; play with the children in the backyard, Tr. 316; and attend her son's basketball games, Tr. 73. Prior to the hearing, Plaintiff also began the application process to volunteer in her son's math class. Tr. 75. These activities, particularly when combined with her other daily activities and work activities, were similarly inconsistent with the level of physical and mental impairment Plaintiff alleges. The inconsistencies between Plaintiff's daily activities and her symptom testimony were a clear and convincing reason to discredit Plaintiff's symptom testimony.

**D. Lay Opinion Evidence**

Finally, Plaintiff challenges the ALJ's rejection of the lay testimony of her mother, Connie Shaw; her aunt, Kim Arbogast; and her former client, Melissa

Monner.  ECF No. 17 at 13-15.  An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1053.  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The ALJ considered the lay opinion evidence and determined the statements were not entirely credible.  Tr. 31.  Plaintiff argues the ALJ erred in failing to give each witness individual consideration and in discrediting the lay opinions because of Plaintiff's adverse credibility finding.  ECF No. 17 at 14.  The ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114.

The ALJ accurately found that the lay opinions reflected the same allegations made by the Plaintiff.  Tr. 31.  Ms. Shaw's statement described Plaintiff's anxiety around other people, her need for reminders, and difficulty focusing.  *Compare* Tr. 365-66 *with* Tr. 316-320 (Plaintiff describes her inability to focus, need for reminders, and social anxiety).  Ms. Arbogast's statement describes

Plaintiff's anxiety, fluctuating moods, and past trauma. *Compare* Tr. 358-59 *with* Tr. 320 (Plaintiff reports "major mood swings") *and* Tr. 61-63 (Plaintiff testifies to social anxiety and flashbacks to past trauma). As discussed *supra*, the ALJ properly rejected Plaintiff's mental impairment symptom testimony for multiple clear and convincing reasons.

Ms. Monner's statement describes Plaintiff's anxiety around others and need to take breaks while working due to back pain. *Compare* Tr. 360 *with* Tr. 69-70 (Plaintiff describes her tendency to have panic attacks around groups of two or more people) *and* Tr. 58-59 (Plaintiff testifies to foot and back pain requiring her to take breaks throughout the day). As discussed *supra*, the ALJ also properly discredited Plaintiff's physical impairment symptom testimony for multiple clear and convincing reasons. Even if Plaintiff worked in the alternative manner described by Ms. Monner, Plaintiff's other activities and testimony provide substantial evidence to support the ALJ's interpretation of the record.

Because these statements are similar to Plaintiff's symptom testimony, and the ALJ properly discredited Plaintiff's symptom testimony for several clear and convincing reasons, the ALJ needed only point to the same reasons to discredit this lay testimony. *Molina*, 674 F.3d at 1114; *Valentine*, 574 F.3d at 694. Further, the ALJ was not required to give an individualized discussion of each witness's statement in order to properly reject it. *Molina*, 674 F.3d at 1114. The ALJ did not

err in rejecting the lay testimony for the same reasons as the ALJ rejected

Plaintiff's testimony.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by

substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

    1.  Plaintiff's motion for summary judgment (ECF No. 17) is **DENIED.**

    2.  Defendant's motion for summary judgment (ECF No. 18) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT**

**FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED January 26, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE
